Pennsylvania Human Relations Commission, Petitioner *v.* School District of Philadelphia, Respondent; Harry and Annemarie Gwynne, et al., Intervenors; Dr. and Mrs. Albert List, Jr., et al., Intervenors.

Argued April 5, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Roy Yaffe,* Special Counsel, with him *Sanford Kahn,* General Counsel, for petitioner.

*Martin Horowitz,* Assistant Counsel, with him *Eugene F. Brazil,* General Counsel, for respondent.

*Daniel Sherman,* for intervenors, Gwynne.

*William H. Ewing* and *Goodman & Ewing,* for amicus curiae, East Mt. Airy Neighbors, Inc.

OPINION BY JUDGE WILKINSON, JR., July 1, 1977:
After nine years, through the combined efforts of the School District of Philadelphia, the Pennsylvania Department of Education, the Pennsylvania Human Relations Commission, and the Intervenors in this case, as well as many other dedicated and concerned citizens of Philadelphia, this Court has before it a voluntary plan for the desegration of the Philadelphia public schools. We believe that this plan may well

be the "light at the end of the tunnel." We hope that it is.

Initially it should be stated here and constantly kept in mind that the segregation to be corrected in the Philadelphia public schools results from the existence of residential areas in which identifiable racial groups predominate. It does not result from a deliberate design by the School District. And, as was stated by Judge ROGERS after 3 days of public hearings in Philadelphia, "[W]e are unable to conclude that the District has deliberately created or preserved a dual school system so as to give the matter constitutional proportions." *Pennsylvania Human Relations Commission v. School District of Philadelphia*, 23 Pa. Commonwealth Ct. 312, 326, 352 A.2d 200, 208 (1976). Judge ROGERS' opinion sets forth the history of this case and the problems it presents, and the plan before us is the plan submitted pursuant to Judge ROGERS' Order.

No effort will be made to summarize the plan. Suffice it to say that it is built around a new magnet school program and permits students and their parents to select the school to attend as long as the choice is consistent with the desegregation of the system. It has been submitted to and approved by the Pennsylvania Department of Education as sound from an educational point of view, with that Department expressing reservations, however, as to the prospects for success of the plan as a tool for desegregation. The plan has also been submitted to the Pennsylvania Human Relations Commission. The heart of the objection of the Pennsylvania Human Relations Commission to the plan is two-fold. The first is that the plan is entirely voluntary and does not initially contain any enforced desegregation. The other is that there is no express provision in the plan for enforced

desegregation if the voluntary plan fails. We can well understand and appreciate the doubts expressed by the Department of Education and the apprehension of the Pennsylvania Human Relations Commission, but this Court is not prepared to order the public schools of Philadelphia to pair specific schools or to bus specific students until those charged with the responsibility of administering the schools have had a reasonable opportunity to implement a plan which they feel will accomplish desegregation with a minimum of disruption and a maximum of educational value.

It should be noted that the School District of Philadelphia is not segregated within the prohibitions of the decisions of the Federal Courts. Decisions, therefore, by the Federal Courts and plans fashioned by federal authorities to cure the ills created by deliberate segregation are not appropriate here. In a manner of speaking, it might be said that the School District of Philadelphia became segregated by action of the people on a voluntary basis by their selection of their neighborhood of residence. It does not seem inappropriate, therefore, to attempt to achieve desegregation by the equally voluntary action of the people in the selection of the schools their children will attend.

All parties here agree that if this plan is approved the School District of Philadelphia should have the school year 1977-1978 to develop the plan in detail and that it should implement the actual desegregation of its schools in accordance with this plan beginning in September of 1978. The School District of Philadelphia believes that a reasonable time to test the plan would be 18 months, i.e., until February of 1980 and we agree. If at that time, however, the Pennsylvania Human Relations Commission concludes that the plan is not accomplishing the desegregation required by Pennsylvania law, it can then petition this Court for such action as it deems appropriate.

Accordingly, we will enter the following

ORDER

Now, July 1, 1977, the Petition for Enforcement is denied and the School District of Philadelphia is ordered to proceed with the detailed development and implementation of the July 1976 School District of Philadelphia Desegregation Plan, to be initiated in September of 1978. In the event that by February 1980, the Pennsylvania Human Relations Commission determines the plan is not accomplishing desegregation as required by Pennsylvania law, this Court retains jurisdiction for such further action as it then deems appropriate.

---

CONCURRING AND DISSENTING OPINION BY JUDGE ROGERS:

The Philadelphia School District's Plan to accomplish the cure of serious conditions of racial segregation is based on the hope that its educational innovations will induce students voluntarily to enroll in the District's schools without regard to race. I have no quarrel with the majority's general approval of the Plan because the Pennsylvania Human Relations Commission, commendably in my view, also generally approves the Plan and Federal funding seems to be in prospect.

The Commission originally had fourteen specific objections to the School District's Plan. Eleven of these objections have been resolved by discussion between the parties. The five remaining Commission objections are:

> 1. The Plan is based entirely on the voluntary participation of students in the program elements to be offered by the District and contains no contingency plan for desegregation by

involuntary reassignment should the voluntary plan fail.

2. The Plan fails to reassign students who attend schools in contiguous school attendance areas by redrawing attendance boundary lines, pairing, or any other means so as to guarantee that some measure of desegregation is accomplished during the first year of the Plan's operation.

3. The Plan fails to include a system of controls to be exercised by the District to guarantee that students will be selected for each program element and site to insure a non-segregated racial mix of participants.

4. A number of the program elements proposed by the District offer only part-time desegregated educational experience.

5. The Plan proposes to exempt large numbers of schools without providing adequate justification as required by this Court's Order.

In my opinion, we should require the School Board's Plan to make provisions for meeting the Commission's objection No. 3 and, to the limited extent hereinafter mentioned, objection No. 2.[1] The

---

[1] The Commission's objection No. 1 is, in my view, unnecessary because this Court will retain jurisdiction and if the voluntary plan does not work, we can act on future applications for enforcement by the Commission. The Commission's objection No. 4 raises a novel question, so far as this writer is aware; that is, that of whether under the statute students must be in an integrated class every hour of every school day. We would not jeopardize the substantial agreements achieved between the parties by embarking on a consideration of this question at this time. The Commission's objection No. 5 draws to our attention that in earlier orders we have said that the District should, as a part of its plan, provide written justification in each instance in which it proposes not to desegregate a school. Since we imposed this requirement, we may excuse the Board's failure to comply. We should not delay the earliest implementation of the plan by insisting on this requirement.

Commission's objection No. 2 is, in my opinion, very important. In our opinion in *Pennsylvania Human Relations Commission v. School District of Philadelphia*, 23 Pa. Commonwealth Ct. 312, 352 A.2d 200 (1976), we listed examples of Philadelphia elementary schools where wide variations in racial composition existed in schools in the same District Planning Areas. At the hearing on the Commission's present Petition for Enforcement the Commission gave evidence that upwards of forty elementary schools could be paired or, by redrawing attendance boundaries, might be provided with an integrated student body. The School District presented reasons why in the cases of some of these schools the Commission's suggestion would present difficulties. The record also discloses, however, that eight elementary schools had been studied by the District's staff on order of the Superintendent and that the staff's study demonstrated how those eight schools could be integrated. The Board voted on whether the staff's Plan should be implemented. The eight elementary schools proposed by the staff to be paired were Catherine (33% black) with Mitchell (96% black); Girard (23% black) with McDaniel (98% black); Howe (92% black) with Lowell (6% black); and Sheppard (5% black) with Fairhill (43.6% black). The School Board by a tie vote rejected the staff's recommendation, apparently in pursuance of a determination that its Plan would contain no involuntary elements whatsoever. I would dismiss the Petition for Enforcement only on condition that the School District agree to meet the Commission's objection No. 3 and implement its staff's Plan for pairing of the eight elementary schools hereinbefore named.